IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARRY DELANDRO and KAREN MURPHY, individually and on behalf of a class of others similarly situated,<br>　　　　　　　Plaintiffs,<br><br>　　　vs<br><br>THE COUNTY OF ALLEGHENY, et al.,<br>　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 06-927<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I. <u>Recommendation</u>:

It is respectfully recommended that the plaintiffs' motion for partial summary judgment on liability (Document No. 107) be granted as to the County of Allegheny and denied in all other respects, and that the defendants' motion for summary judgment (Document No. 111) be granted as to defendants Ramon Rustin, Edward Urban, Gregory Grogan, Lance Bohn and William Emerick and denied in all other respects.

II. <u>Report</u>:

Presently before the Court are motions for summary judgment submitted by the parties. For reasons discussed below, the plaintiffs' motion for partial summary judgment on liability should be granted as to the County of Allegheny and denied in all other respects, and the defendants' motion for summary judgment should be granted as to the individual defendants and denied in all other respects.

On November 8, 2007, plaintiffs Harry Delandro and Karen Murphy, individually and on behalf of others similarly situated, filed a second amended class action complaint against

defendants County of Allegheny (the "County") and the following officials of the Allegheny County Jail ("ACJ"): ACJ Warden Ramon Rustin, ACJ Deputy Wardens Edward Urban, Gregory Grogan and Lance Bohn, and ACJ Assistant Deputy Warden William Emerick. The plaintiffs complain that after being charged with non-felony offenses, the defendants violated their Fourth Amendment rights by subjecting them to strip searches and visual cavity searches at ACJ absent any assessment of individualized reasonable suspicion that they were concealing a weapon or contraband. To vindicate the alleged violation of their Fourth Amendment rights, the plaintiffs filed their second amended complaint on behalf of themselves and a purported class of thousands of others who were strip searched at ACJ after being charged with petty crimes.

On November 30, 2007, the plaintiffs moved for a preliminary injunction and for class certification. In their motion for a preliminary injunction, the plaintiffs sought to enjoin the defendants from illegally strip-searching all pretrial detainees entering the custody of ACJ in the absence of individualized reasonable suspicion.

In an Order dated March 18, 2008, and with the consent of the parties, the Court granted the plaintiffs' motion for a preliminary injunction. In its Order of March 18, 2008, the Court preliminarily enjoined the defendants from conducting strip searches of detainees placed into the custody of ACJ after being charged with, but not convicted of, misdemeanors, summary offenses, and violations of probation or parole where the underlying offense is a misdemeanor, traffic infraction, civil commitment or other minor crime, without reasonable suspicion to believe that such persons were secreting contraband and/or weapons. The Court's Order specified that from March 18, 2008 and continuing forward, "all strip searches of said detainees will be based on individualized reasonable suspicion."

In an Order dated August 8, 2008, the Court granted the plaintiffs' motion for class certification, and the Class was defined as:

> All persons who have been incarcerated at the Allegheny County Jail commencing on July 13, 2004 and continuing to March 18, 2008 who, after being charged but not convicted of misdemeanors, summary offenses, civil commitments, and traffic infractions as defined by the laws of the Commonwealth of Pennsylvania, as well as parole or probations violations where the underlying offense is a misdemeanor, summary offense or traffic infraction who, pursuant to the policy of Allegheny County, have been strip searched upon their entry into the Allegheny County Jail without reasonable suspicion.

As to the above class description, the record shows that during the class period, ACJ did not conduct blanket strip searches of all pretrial detainees upon their immediate entry into ACJ.[1] Rather, the complained-of strip searches of proposed class members occurred at the time they received the jail uniform and entered the general population.[2]

The plaintiffs assert that regardless of what point in the intake process a detainee is strip searched, the crux of the matter is that all class members are strip searched without reasonable suspicion after being charged only with minor offenses. At issue is whether such blanket strip searches at ACJ violated the plaintiffs' Fourth Amendment rights.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979). In Bell, the Supreme Court reviewed a policy which subjected inmates to strip and body cavity searches after every contact visit with

---

1.   See, affidavit of Lance Bohn (Doc. No. 117-3) at ¶ 3.

2.   Id. at ¶ 17, and plaintiffs' consolidated brief (Doc. No. 116) at p. 5. Certainly, a Court can alter or amend its order on class certification at any time prior to the entry of final judgment. F.R.Civ.P 23(c)(1)(C); Gutierrez v. Johnson & Johnson, 523 F.3d 187, 199 n.12 (3d Cir. 2008).

someone from outside the institution.  In balancing the need for institutional safety with the intrusion upon an inmate's personal rights, the Court in Bell explained: "[a] detention facility is a unique place fraught with serious security dangers.  Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence."  Id. at 559.  However, "[w]e do not underestimate the degree to which these [strip] searches may invade the personal privacy of inmates."  Id. at 560.  Recognizing that "a security guard may conduct the search in an abusive fashion", the Court in Bell emphasized "[t]he searches must be conducted in a reasonable manner."  Id.

> In Bell, the Court stated:
>
> The test of reasonableness under the Fourth Amendment is
> not capable of precise definition or mechanical application.
> In each case, it requires a balancing of the need for the
> particular search against the invasion of personal rights
> that the search entails.  Courts must consider the scope
> of the particular intrusion, the manner in which it is
> conducted, the justification for initiating it, and the place
> in which it is conducted.

Id. at 559.  After balancing these factors, the Court in Bell held that conducting strip searches of inmates after every contact visit with a person from outside the prison was not unreasonable.  Id. at 558-60.  However, the Court did not address the issue here, i.e., whether individualized reasonable suspicion is required to strip search new arrestees who are charged only with minor offenses as part of the intake process of booking them into a prison's general population.

Following Bell, the prevailing view among Circuit Courts of Appeal is that to be reasonable under the Fourth Amendment, strip searches of arrestees charged with minor crimes must be justified by a reasonable suspicion that the arrestee is concealing contraband or weapons.  See, Bull v. City and County of San Francisco, 539 F.3d 1193 (9th Cir. 2008); Roberts v. Rhode

Island, 239 F.3d 107 (1st Cir. 2001); Masters v. Couch, 872 F.2d 1248 (6th Cir. 1989), cert. denied, 493 U.S. 977 (1989); Weber v. Dell, 804 F.2d 796 (2d Cir. 1986), cert. denied, 483 U.S. 1020 (1987); Stewart v. Lubbock County, 767 F.2d 153 (5th Cir. 1985), cert. denied, 475 U.S. 1066 (1986); Jones v. Edwards, 770 F.2d 739 (8th Cir. 1985); Hill v. Bogans, 735 F.2d 391 (10th Cir. 1984); Mary Beth G. v. City of Chicago, 723 F.2d 1263 (7th Cir. 1983); and Logan v. Shealy, 660 F.2d 1007 (4th Cir. 1981), cert. denied, 455 U.S. 942 (1982).

Conversely, the minority view, espoused in Powell v. Barrett, 541 F.3d 1298 (11th Cir. 2008), is that a practice of strip searching jail detainees booked into the general population for the first time, even without reasonable suspicion to believe they were concealing contraband, does not violate the Fourth Amendment. The rationale for the Powell Court's decision is that:

> [t]he security needs that the Court in Bell found to justify strip searching an inmate re-entering the jail population after a contact visit are no greater than those that justify searching an arrestee when he is booked into the general population for the first time.

Id. at 1302.

The Third Circuit Court of Appeals has not ruled on this issue, but district courts in this circuit have sided with the majority view, holding that to be constitutional, strip searches of detained arrestees must be justified by a reasonable suspicion that they possess contraband or a weapon. See, Allison v. The GEO Group, 611 F.Supp.2d 433, 462-63 (E.D.Pa. 2009); Florence v. Bd. of Chosen Freeholders of Burlington, 595 F.Supp.2d 492, 512-13 (D.N.J 2009); Newkirk v. Sheers, 834 F.Supp. 772, 787-90 (E.D.Pa. 1993); Ernst v. Borough of Fort Lee, 739 F.Supp. 220, 224 (D.N.J. 1990). In Florence, supra, the Court criticized the Powell decision, finding "its contrarian holding less than compelling", as "[t]he post-contact visit searches upheld in Bell are

dissimilar to the post-intake searches struck down by the [other Circuit Courts of Appeal]". 595 F.Supp.2d at 511. Similarly, in Allison, supra, the Court stated that it was "not persuaded by [Powell]'s attempts to place arrestee strip searches under the umbrella of the Bell holding with regard to contact visits", 611 F.Supp.2d at 460, as "courts have consistently concluded that the interests which justified the implementation of a *blanket* policy in the *contact visit* context in Bell -- discovery and deterrence -- did not justify the implementation of a *blanket* policy in the *arrestee context.*" Id. at 462 (italics in original).

The parties have filed cross-motions for summary judgment on whether the strip searches at issue violated the Fourth Amendment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Plaintiffs' motion for partial summary judgment on liability:

In support of their motion, the plaintiffs aver that during the Class period, the defendants maintained a practice of conducting blanket strip and visual cavity searches on all pretrial detainees who were given the jail uniform and booked into the general population without individualized reasonable suspicion that they possessed a weapon or contraband. The testimony of ACJ corrections officials, including the County's F.R.Civ.P. 30(b)(6) designee, Lieutenant Phil Cestra, confirm that fact.[3]

Lieutenant Cestra testified that all detainees at ACJ are strip searched in the

---

3. See, plaintiffs' memorandum of law in support of their present motion (Doc. No. 108) at pp. 2-5, citing ACJ corrections officers' deposition testimony.

shower room when receiving the jail uniform in "Phase 6" of the booking process pursuant to the policy and practice of the County; detainees are strip searched for contraband at that juncture, because they may enter the general population and commingle with others.[4] Lt. Cestra confirmed that the strip searches at issue require a detainee to completely disrobe and manipulate his or her body parts in front of an officer; thus, a male detainee is asked to lift his scrotum and testicle sac, bend at the waist, and spread his buttocks, while a female is required to lift her breasts, squat and cough to see if contraband is dislodged from her vagina or rectum.[5] Significantly, Cestra testified that these strip searches are conducted regardless of a detainee's criminal charge, and absent any individualized reasonable suspicion that they are secreting contraband.[6]

For instance, with respect to plaintiff Harry Delandro, the record shows that on April 19, 2006, Delandro was arrested at his home on non-felony charges for missing a child support hearing while he was in the hospital for surgeries on his ankle; that at the time of his arrest, he was on crutches and wearing a foot mobilizer; that he had never before been arrested, nor charged with any violence-related or drug-related offense; that following his arrest, he was taken to ACJ, and approximately ten hours later, he was strip searched in the shower room, after being issued a prison jumpsuit; and that in connection with the search, he had to remove all clothing, bend over, spread his buttocks and cough, after which he felt humiliated and violated.[7]

---

4.   See, deposition of Phil Cestra at pp. 20-22, 111, 155-56, 165-67.

5.   Id. at pp. 22-23.

6.   Id. at pp. 166-67.

7.   See, hearing transcript on plaintiffs' motion for preliminary injunction and class certification (Doc. No. 107-11) at pp. 5-7.

As to plaintiff Karen Murphy, the plaintiffs aver that on or about August 23, 2005, Murphy was arrested on misdemeanor charges of disorderly conduct and harassment after placing a call to 911 operators requesting that police be sent to her father's home to check on him; that at the time of her arrest, Murphy was wearing only her underwear and a tee shirt; that after she was booked into ACJ, Murphy was put in a holding cell where she remained for several hours; that she was later strip searched during the course of a supervised shower, at which time she was required to lift her breasts, squat, and manipulate her genital areas so she could be viewed by a female guard; and that while being strip searched, Murphy could see several inmates and jail guards, and the strip search totally humiliated her and made her feel like she was raped.[8]

To determine if the blanket strip searches at issue were reasonable, we must balance the need for the particular searches against the invasion of personal rights that the searches entail. Bell, 441 U.S. at 559. To do so, "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

Here, the scope of the particular intrusions and the manner in which they are conducted require detainees to completely disrobe and manipulate their body parts while an officer (of the same gender as a detainee) conducts a visual body cavity inspection. The place where these searches occur is in the shower area, where curtains are supposed to be closed, so the searches cannot be viewed by others.[9] All detainees are subjected to these strip searches when they are given a jail uniform and admitted to ACJ's general population, regardless of their

---

8. Id. at pp. 12-16.

9. See, Bohn affidavit (Doc. No. 117-3) at ¶ 9.

criminal charge or any individualized reasonable suspicion that they are concealing contraband.[10]

Several Courts recognize that "visual body cavity searches 'impinge seriously upon' Fourth Amendment values." Roberts, supra, 239 F.3d at 110, quoting Swain v. Spinney, 117 F.3d 1, 7 (1st Cir. 1997). As stated in Roberts, "we consider such searches an extreme intrusion on personal privacy and an offense to the dignity of the individual". 239 F.3d at 110 (citation omitted). Also see, Bull, supra, 539 F.3d at 1197 ("[t]he intrusiveness of a body-cavity search cannot be overstated") (citation omitted); Mary Beth G., supra, 723 F.2d at 1272 (finding such searches "demeaning, dehumanizing ... and repulsive"); and Florence, 595 F.Supp. 2d at 506 (observing that "a clear consensus demonstrates that these searches are undignified and unconstitutional.").

The defendants' justification for the visual body cavity inspections is to search for contraband[11], which is a legitimate security concern. However, in balancing the need for these particular searches against the invasion of a detainee's personal rights, "[c]ourts have given prisons far more leeway in conducting searches of inmates with outside contact than in searching everyone, simply because such visits often allow smuggling of contraband." Roberts, 239 F.3d at 111, citing Bell, 441 U.S. at 558, and Masters, supra, 872 F.2d at 1253 (citing the "obvious risk" that visits from outsiders may be used to introduce contraband).

In Roberts, the First Circuit Court of Appeals explained:

> [I]t is far less likely that smuggling of contraband will occur
> subsequent to an arrest (when the detainee is normally in

---

10. See, plaintiffs' memorandum of law in support of their present motion at pp. 2-5, citing ACJ corrections officers' deposition testimony.

11. See, Bohn affidavit at ¶ 8.

> handcuffed custody) than during a contact visit that may have been arranged solely for the purpose of introducing contraband to the prison population. Furthermore, after an arrest, [law enforcement] authorities should be able to detect contraband on the person of a detainee without the need for a body cavity inspection. In addition, the deterrent rationale for the Bell search is simply less relevant given the essentially unplanned nature of an arrest and subsequent incarceration.

239 F.3d at 111, citing Giles v. Ackerman, 746 F.2d 614, 617 (9th Cir. 1984). Indeed, Lt. Cestra testified that "[i]t's not usually our new arrestees that have [contraband hidden in a body cavity] because they're getting caught out on the street", and confirming that most people don't walk around with items secreted in a body cavity.[12]

Importantly, in cases as here, where an arrestee is charged only with a misdemeanor, minor offense or traffic violation (crimes not usually associated with weapons or contraband), the majority view is that officers must have a reasonable suspicion such individual is concealing contraband before conducting a strip search. Roberts, 239 F.3d at 112, citing Weber, supra, 804 F.2d at 802 (misdemeanors); Stewart, supra, 767 F.2d at 156-57 (misdemeanors); Giles, supra, 746 F.2d at 617 (traffic violations and other minor offenses); Mary Beth G., 723 F.2d at 1272-73 (misdemeanors). In addition, several Courts hold that an arrestee's intermingling with the general population, by itself, is insufficient to justify a strip search absent individualized reasonable suspicion. Bull, 539 F.3d at 1196-99; Roberts, 239 F.3d at 112-13; Chapman v. Nichols, 989 F.2d 393, 396 (10th Cir. 1993); Masters, 872 F.2d at 1254.

Based on the prevailing authority cited above, and having balanced ACJ's security concerns against the personal rights of proposed class members, it appears that the suspicion-less

---

12. See, deposition of Phil Cestra at pp. 150, 152-53.

strip searches at issue are unreasonable.  Thus, we agree with the plaintiffs that they are entitled to partial summary judgment on liability, as no disputed issue of fact exists as to the County's liability for its strip search practice.

<u>Defendants' motion for summary judgment:</u>

The defendants move for summary judgment as to individual defendants Rustin, Urban, Grogan, Bohn and Emerick on grounds that insofar as they are sued in their "official capacity", summary judgment is appropriate, because an "official capacity" suit is a "way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  To the extent the individual defendants are sued in their "individual capacity", the defendants argue that they are entitled to qualified immunity.

The plaintiffs do not agree that the individual defendants are entitled to qualified immunity; however, they consent to the dismissal of the individual defendants from this case due to the County's liability for its strip search policy.[13]  In fact, the plaintiffs request the Court to dismiss the individual defendants, as they do not seek any additional damages from them other than those they can recover from the County.[14]  Since the plaintiffs have joined in the defendant's motion to dismiss the individual defendants[15], summary judgment should be granted as to defendants Rustin, Urban, Grogan, Bohn and Emerick.

With respect to the County, the defendants argue it is entitled to summary judgment, as the plaintiffs have failed to demonstrate any policy or practice which violates their

---

13.   See, plaintiffs' consolidated brief (Doc. No. 116) at p. 2.

14.   Id. at pp. 10-11.

15.   Id. at p. 11.

constitutional rights.  However, for reasons discussed above, the County's practice of conducting blanket strip searches on arrestees charged with minor crimes without reasonable suspicion to believe they are concealing contraband violates their Fourth Amendment rights.

Therefore, it is recommended that the plaintiffs' motion for partial summary judgment on liability (Document No. 107) be granted as to the County and denied in all other respects, and that the defendants' motion for summary judgment (Document No. 111) be granted as to defendants Rustin, Urban, Grogan, Bohn and Emerick and denied in all other respects.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                                    Respectfully submitted,

                                                    <u>s/ ROBERT C. MITCHELL</u>
                                                    United States Magistrate Judge

Dated: September 1, 2009