**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HARRY DELANDRO and KAREN MURPHY,** | ) |
| **individually and on behalf of a class of others** | ) |
| **similarly situated,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs** | )   **Civil Action No. 06-927** |
| | ) |
| **THE COUNTY OF ALLEGHENY,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND**
**ORDER GRANTING FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND JUDGMENT**

Plaintiffs' have moved for the certification of a class for the purpose of settlement and final approval of the settlement in this case involving the policy of Allegheny County to strip-search all pretrial detainees upon admission to the Allegheny County Jail (ACJ). Class Counsel has also moved for an award of attorneys' fees, reimbursement of out-of-pocket costs and expenses, and for an incentive award for the individually named Plaintiffs. After a fairness hearing conducted on March 1, 2011, the Court will grant these motions and will enter final judgment and an order of dismissal.

**Background**

A.    Factual and Procedural History

On November 8, 2007, plaintiffs Harry Delandro and Karen Murphy, individually and on behalf of others similarly situated, filed a second amended class action complaint against Defendants Allegheny County and the following officials of the Allegheny County Jail ("ACJ"): Warden Ramon Rustin, Deputy Wardens Edward Urban, Gregory Grogan, and Lance Bohn, and

Assistant Deputy Warden William Emerick.[1]   Plaintiffs complain that Defendants violated their Fourth Amendment right to be free from unreasonable searches and seizures for having been subjected to strip searches at ACJ after being charged with non-felony offenses pursuant to a policy or practice promulgated by Allegheny County.

Prior to March 18, 2008, the ACJ had a policy and practice of strip searching all individuals entering ACJ who were placed in jail clothing, regardless of their criminal charge and without reasonable suspicion to believe they were concealing a weapon or contraband (hereinafter, Allegheny County's "former policy").  The former policy was said to be derived from written procedures of the ACJ and promulgated by the individual Defendants.  To vindicate the alleged violation of their Fourth Amendment right against unreasonable searches and seizures based on the former policy, Plaintiffs filed their second amended complaint on behalf of themselves and a purported class of thousands of others who were strip searched at ACJ after having been charged with minor criminal offenses.   Plaintiffs contend that Allegheny County's former policy on uniform strip searches violated their civil rights.

Plaintiffs contend that on April 19, 2006, Harry Delandro was arrested in his home on a non-felony charge for failing to pay child support; that at the time of his arrest, Delandro was on crutches and wearing a foot mobilizer, and his arrest lacked any reasonable suspicion that he harbored weapons or contraband; that he was placed in a holding cell at ACJ for the night, and the following morning, he was provided with jail clothes and strip searched; and that the next

---

[1]     Plaintiffs filed their first class action complaint on July 13, 2006.  The first amended class action complaint was filed on October 3, 2006.  The individually named Defendants were dismissed from this action on December 2, 2009, and removed from the caption. *See* Doc. No. 125.

day, he was taken to processing so he could prepare to go to court, after which he saw a hearing officer who ordered that he be released. Upon returning to ACJ, he was put in a holding cell where he was able to observe other individuals being strip searched while he waited for his turn to be strip searched; and that he was again strip searched.

Plaintiffs also contend that on August 25, 2005, Karen Murphy was arrested on misdemeanor charges of disorderly conduct and harassment after placing a 911 call to operators requesting that police be sent to her father's home to check on him; that at the time of her arrest, Ms. Murphy was wearing only her underwear and a tee shirt; that after she was booked into ACJ, Murphy was put in a holding cell were she remained for several hours; and that she was later strip searched during the course of a supervised shower.

In the second amended complaint, Plaintiffs seek compensatory and punitive damages for themselves and all class members, as well as a declaratory judgment that Allegheny County's former policy and practice on strip searches was unconstitutional. On November 30, 2007, Plaintiffs moved for a preliminary injunction and class certification. Doc. Nos. 65 & 66. In their motion for a preliminary injunction, Plaintiffs sought to enjoin the Defendants from illegally strip-searching all pretrial detainees entering custody at ACJ in the absence of individualized reasonable suspicion. *Id*. In an Order dated March 18, 2008, and with the consent of the parties, this Court granted Plaintiffs' motion for a preliminary injunction. Doc. No. 85.

In an Order dated August 8, 2008, this Court granted Plaintiffs' motion for class certification, and the Class was defined as:

> All persons who have been incarcerated at the Allegheny County Jail commencing on July 13, 2004 and continuing to March 18, 2008 who, after being charged but not convicted of misdemeanors, summary offenses, civil commitments, and traffic

infractions as defined by the laws of the Commonwealth of Pennsylvania, as well as parole or probations violations where the underlying offense is a misdemeanor, summary offense or traffic infraction who, pursuant to the policy of Allegheny County, have been strip searched upon their entry into the Allegheny County Jail without reasonable suspicion.

Doc. No. 99. The Court notes that the Settlement Agreement between the parties that Plaintiffs now seek to have approved contains the same definition of the Class. Doc. No. 151.

The parties engaged in extensive discovery. Upon the completion of which, on April 24, 2009 Plaintiffs filed a motion for partial summary judgment on the issue of the constitutionality of the strip-search policy. Doc. No. 107. In support of their motion, Plaintiffs produced deposition testimony which confirmed that during the Class period, Defendants maintained a practice of conducting blanket strip and visual cavity searches on all pretrial detainees who were given a jail uniform and processed into the jail's general population without individualized reasonable suspicion that they possessed a weapon or contraband. *See* Doc. No. 108 at pp. 2 - 5, citing the deposition testimony of the County's Fed.R.Civ.P. 30(b)(6) designee.

Defendants responded to Plaintiffs' motion a month later (Doc. No. 109) and filed their own motion for summary judgment (Doc. No. 111), to which Plaintiffs responded (Doc. No. 116). Defendants argued in part that the search policy was justified by ACJ's need for security and safety. They maintained that the policy was necessary to prevent detainees from smuggling contraband into the jail. *See* Doc. No. 112 at . They also argued that the searches were reasonable. Defendants further sought summary judgment for those claims directed at the individually named Defendants brought in their official capacity, as being a way of pleading against the government entity itself. In terms of any claim brought against the individual Defendants in their personal capacities, they argued summary judgment was appropriate based

upon qualified immunity. In response to Defendants' motion for summary judgment, Plaintiffs did not agree that the individual Defendants were entitled to qualified immunity, but did consent to the dismissal of the individual Defendants from the class action. Doc. No. 116 at p. 2.

On December 2, 2009, this Court granted Plaintiffs' partial motion for summary judgment of liability as to the County, and granted Defendants' motion for summary judgment as to the individual Defendants. Doc. No. 125. Following that order, the parties engaged in settlement negotiations, which ultimately resulted in a settlement agreement.

B.    Settlement Agreement

As noted above, the Settlement Agreement defines the Settlement Class as follows:

> All persons who have been incarcerated at the Allegheny County Jail commencing on July 13, 2004 and continuing to March 18, 2008 who, after being charged but not convicted of misdemeanors, summary offenses, civil commitments and traffic infractions as defined by the laws of the Commonwealth of Pennsylvania, as well as parole or probation violations where the underlying offense is a misdemeanor, summary offense or traffic infraction who, pursuant to the policy of Allegheny County, have been strip searched upon their entry into the Allegheny County jail without reasonable suspicion.

Doc. No. 151, Settlement Agreement at 8. The Settlement Agreement recognized that the County had changed its policy to stop strip-searching all pretrial detainees on a blanket basis and to stop strip-searching misdemeanor detainees in the absence of reasonable suspicion of a weapon or contraband. *Id*. at 11. The Settlement Agreement states that the ACJ's current written policy has been reviewed by the Allegheny County Law Department for compliance with state and federal law. The County maintains that the current policy is constitutional. The Settlement Agreement requires that all correction officers have access to the policy and are trained on search policy. The strip search policy will be posted in the intake area of the ACJ.

Current and new corrections officers have been and will continue to be trained regarding the strip search policy and when strip searches may and may not be performed. *See* Settlement Agreement at 11.

The Settlement Agreement creates a fund in the amount of three million dollars ($3,000,000.00) to compensate class members. *Id*. at 8. All administrative expenses, including the costs of settlement administration, website maintenance, notice to class members and attorneys' fees, costs, expenses, and incentive awards are to be deducted from the settlement fund prior to determining the amount of distributions to class members. *Id*. at 12. Class counsel agreed that they would seek not more than thirty three and one third percent (33 1/3 %) of the gross Settlement Fund as attorneys' fees. *Id*. at 14. The Settlement Agreement also states that an award of $18,000.00 will be requested for each of the two (2) class representatives. *Id.* at 20. The Settlement Agreement provides that each class member who submits a timely claim form will be granted a pro rata share of the Settlement Fund in an amount not to exceed $3,000.00 per class member. Any undistributed funds will be donated to Neighborhood Legal Services Association of Allegheny County, PA.

Notice was to be provided by the direct mailing of class notice and a claim form to all identifiable individuals in the Settlement Class. The Settlement Agreement provides that notice would also be given by television advertisement. The settlement administrator was instructed to establish a website and maintain a toll-free number. Copies of the class notice and claim form were to be available by request over the phone, and downloadable copies of the documents would be available at the website. The Settlement Agreement provided the method for class members to submit requests for exclusion in writing. It also provided the process for objecting to the

settlement, including the reservation of the right to appeal final judgment of the settlement. *Id.* at 18.

The Settlement Agreement was preliminarily approved by Order of Court on September 30, 2010.

C.    Notice to the Class

The claims administrator attests that notice went out to 12,398 putative class members on November 29, 2010, by direct first class mail of the Class Notice and a claim form. *See* Doc. No. 158 at Exhibit A.  All mail that was undeliverable because of inaccurate addresses was investigated by use of a locator database to ascertain the correct address and then re-mailed to the members of the class where possible. *Id.*  5,609 notices were returned as undeliverable, from which 3,254 notices were re-mailed after updated addresses were obtained.

The claims administrator also contracted with a website administrator to create a website that provided information to the class in both English and Spanish.  The website administrator maintained the settlement website, www.alleghenystripsearch.com, which received 2,940 visitors, with the claim form having been viewed 1,862 times.  A toll-free phone number was also established that handled incoming telephone calls and written correspondence from prospective class members. *Id.*  Finally, the administrator provided notice through a limited notice campaign on television. *See* Doc. No. 151, Settlement Agreement.

D.    The Response of the Class

The claims administrator received 2,085 claims forms, none of which have yet to be validated.  Of those, five members of the class have opted out, and one objector, April Taylor, has submitted a written objection to the proposed settlement.  Ms. Taylor objects to the amount

of the *pro rata* payout under the settlement. *See* Objection of April Taylor. She did not appear at the fairness hearing personally or by counsel.

The accumulated cost of the administrator for the services provided was $164,576.39. Of this amount, the administrator has billed and received $93,395.22, and has not yet requested payment for the unbilled amount of $71,181.17. Due to the volume and response of the class, the administrator anticipates spending an additional $30,000.00 above the $235,000 originally projected as the class administration costs. Plaintiffs' have requested that the Court award a total of $265,000 in administrative costs, with a credit/deduction for the $93,395.22 heretofore received by the administrator from class counsel.

E.      Attorney's Fees, Expenses, and Class Representative Awards

Class counsel have requested thirty three and one third percent (33 1/3 %) of the gross Settlement Fund for attorney's fees, which amounts to a payment of $1,000,000.00. *See* Doc. No. 159. Class counsel also seeks reimbursement for out-of-pocket costs and expenses of $155,030.91. Doc. No. 164. Finally, class counsel requests a special award of $18,000 for each of the two named class representatives. Doc. No. 159.

**Discussion**

The Court decides the following four questions:

1.      whether the proposed class can be properly certified under Federal Rule of Civil
         Procedure 23;

2.      whether notice to the class regarding the settlement and attorneys' fees petition
         was adequate;

3.      whether the settlement itself is fair, reasonable and adequate; and

4.    whether class counsels' petition for attorneys' fees, out-of-pocket expenses and special awards to the class representatives should be approved.

As preliminary matter, the Court will discuss the law relating to the constitutionality of a strip-search policy such as that at issue here.  The Supreme Court has held that a court must analyze a prison's strip-search policy under the Fourth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  In *Bell*, a federal short-term custodial facility had a policy to strip-search all pretrial detainees after a contact visit with an outside visitor. The Court found that, under the circumstances, the strip-searches conducted under the policy were not unreasonable under the Fourth Amendment.  *See id.* at 559, 99 S.Ct. 1861.

In determining the reasonableness of a prison's search policy, the *Bell* Court held that courts must balance the prison's significant and legitimate interests in safety and security with the privacy interests of the individuals.  *See id.* at 559-60, 99 S.Ct. 1861.  It presented four factors for a court to consider in that balance: (1) the scope of the particular intrusion; (2) the manner in which it is conducted; (3) the justification for initiating it; and (4) the place in which it is conducted.  *See id.* at 559, 99 S.Ct. 1861.

The Court in *Bell* found that the prison's policy was reasonable under this standard because the interest in preventing contraband from entering the prison facility outweighed the privacy interests of the inmates searched.  The categorical reasonable suspicion that a prisoner might use contact with an outside visitor to smuggle contraband into the prison justified the privacy intrusion under the policy.  *See id.* at 558, 99 S.Ct. 1861.

The holding in *Bell* was limited to the specific policy in question, and the Supreme Court left open the question of whether reasonable suspicion must be established to justify a policy to

strip-search all incoming inmates or pretrial detainees. Since that time, however, Circuit Courts of Appeal and several district courts have addressed the issue.

Courts in most circuits have held that a policy to strip-search all pre-trial detainees is unconstitutional under *Bell*.[2] These courts have interpreted *Bell* to require that a prison have reasonable suspicion that a particular arrestee is concealing weapons or other contraband before conducting a strip-search of that arrestee. Some of these courts have also concluded that *Bell* allows such reasonable suspicion to be established categorically for certain groups of prison detainees, such as those charged with felonies or violent or drug-related misdemeanors.[3]

Recently, the proverbial tide has turned with respect to suits challenging the constitutionality of such policies. The U.S. Court of Appeals for the Eleventh Circuit was the first to break with the majority when, sitting *en banc*, it overruled its previous decisions on this issue. *See Powell v. Barrett*, 541 F.3d 1298 (11th Cir.2008)(*en banc*)(overruling *Wilson v. Jones*, 251 F.3d 1340 (11th Cir.2001)). The court in *Powell* held that a blanket strip-search policy for all arrestees can be constitutional under *Bell*. It reasoned that the *Bell* balancing test allows for the interest of prison security to outweigh the individual privacy interests of detainees, regardless of whether there is reasonable suspicion that the particular arrestee is concealing weapons or

---

2    *See Roberts v. Rhode Island*, 239 F.3d 107 (1st Cir.2001); *Weber v. Dell*, 804 F.2d 796 (2d Cir.1986), cert. denied, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir.1989), cert. denied, 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989); *Jones v. Edwards*, 770 F.2d 739 (8th Cir.1985); *Stewart v. County of Lubbock*, 767 F.2d 153 (5th Cir.1985), cert. denied, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Hill v. Bogans*, 735 F.2d 391 (10th Cir.1984); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir.1983); *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), cert. denied, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

3    *See, e.g.*, *Weber*, 804 F.2d at 802; *Masters*, 872 F.2d at 1255; *Mary Beth G.*, 723 F.2d at 1272.

contraband. *See id.* at 1309-12. The Ninth Circuit Court of Appeals followed suit when, also

sitting *en banc*, it reversed prior precedent and upheld the San Francisco Sheriff's policy

authorizing strip searches of all arrestees before they are placed in the general population of a

county jail. *Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010)(*en

banc*)(overruling *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984)).

   The U.S. Court of Appeals for the Third Circuit has very recently joined this trend. With

the decision in *Florence v. Board of Chosen Freeholders of the County of Burlington*, 621 F.3d

296 (3d Cir. 2010), the Court applied the balancing test of *Bell* and held that the challenged

policy of conducting strip searches of all arrestees upon their admission into the general prison

population was reasonable, and that the jails were not required to provide evidence of attempted

smuggling or discovered contraband as a justification for the policy. It is important to note that

on September 15, 2010, six days before the *Florence* decision, Plaintiffs moved for the

preliminary approval of the settlement agreement reached between the parties. *See* Doc. No. 153.

Preliminary approval of the Settlement Agreement was granted on September 30, 2010.

   With that precedent in mind, the Plaintiffs in this case, therefore, would have to establish

that the County's policy was unconstitutional under the *Bell* standard. They must show that,

under the *Bell* balancing test, the policy was unreasonable as applied to all persons arrested for

misdemeanors and minor crimes, in addition to those charged with violence, drug, or weapons-

related crimes and those with a previous felony or violence, drug, or weapons-related

misdemeanor convictions.

**A.      Class certification**

A court presented with a request for approval of a class certification and settlement must separate its analysis of the class certification from its determination that the settlement is fair. *See In re Insurance Brokerage Antitrust Litigation*, 579 F.3d 241, 257-58 (3d Cir.2009).  To certify a class under Federal Rule of Civil Procedure Rule 23, a court must find that all four requirements of Rule 23(a) and at least one part of Rule 23(b) are met.  *See Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994).

Here, the Settlement Class includes all individuals who were placed into custody at ACJ after being charged with misdemeanors or other minor crimes and were strip-searched upon entry into the general population of the institution.  The class period commences on July 13, 2004 (which is two years prior to the date the original complaint was filed) and extends to, and includes, March 18, 2008 (the date the Defendants stopped enforcing the former policy).

On November 30, 2007, Plaintiffs moved for class certification pursuant to Federal rules of Civil procedure 23(a) and 23(b)(3), or in the alternative 23(b)(2), seeking to certify a class consisting of all pretrial detainees who were placed into the custody of ACJ and strip searched after being charged with petty crimes under Defendants' former strip search policy.  *See* Doc. Nos. 65 & 66.    On March 17 and 18, 2008, a hearing on Plaintiffs' motion for class certification was held before United States Magistrate Judge Robert C. Mitchell.  On June 18, 2008, Magistrate Judge Mitchell recommended that Plaintiffs' motion for class certification be granted. Doc. No. 94.  More specifically, Magistrate Judge Mitchell agreed with plaintiffs that the class satisfied the requirements under both Rule 23(b)(3) as a class entitled to monetary damages, and, in the alternative, as a class under Rule 23(b)(2) entitled to injunctive relief.  Defendants objected

12

to the Report and Recommendation on July 7, 2008. Doc. No. 97. On August 8, 2008, this

Court adopted the Report and Recommendation and granted the motion for class certification.

Doc. No. 99. Plaintiffs now seek certification of the class for settlement purposes. In view of

this Court's previous certification for the purpose of trial and the settlement agreement between

the parties, the Court will consider final certification for settlement purposes.

1.      Analysis Under Rule 23(a)

Rule 23(a) requires that four requirements be met in order for a to be certified:

numerosity, commonality, typicality, and adequate representation. *See Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). The Court finds that the

four requirements of Rule 23(a) are met.

a.      Numerosity

Rule 23(a)(1) requires a class to be so numerous that joinder of all members is

impracticable. Classes exceeding forty or more class members are generally held to meet the

numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir.2001). The

Settlement Class consists of potentially over 12,000 individuals. Currently, 2,085 of those

individuals have submitted unverified claims forms. Because individual joinder of such a large

class is impracticable, the Plaintiffs satisfy the numerosity requirement. As Magistrate Judge

Mitchell noted in his Report and Recommendation, Defendants have not disputed that the

numerosity requirement is satisfied. As such, the Court is satisfied that it has been met.

b.      Commonality

Rule 23(a)(2) requires that there are questions of law or fact common to the class. If class

members share at least one question of law or fact in common, factual differences among the

claims of the class members do not defeat certification. *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 310 (3d Cir.1998). In this case, there is a legal issue common to all class members, which itself is based on a set of common facts and legal questions, such as: whether Allegheny County utilized a strip search policy or practice at ACJ during the proposed class period; whether the County's former policy violated the plaintiffs' civil rights against unreasonable searches; and whether Allegheny County is directly responsible for the alleged violations of plaintiffs' rights. This satisfies the Rule 23(a)(2) commonality requirement.

      c.     Typicality and Adequacy

Rule 23(a)(3) and (a)(4) require that the claims or defenses of the representative parties be typical of the claims or defenses of the class and that the representative parties will fairly and adequately protect the interests of the class. The Court of Appeals for the Third Circuit has noted that these two inquiries tend to merge because both evaluate the relation of the claims and the potential conflicts between the class representatives and the class in general. *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir.2006).

The typicality inquiry centers on whether the interests of the class representatives align with the interests of the absent class members such that the former is working towards the benefit of the class as a whole. *See In re Prudential*, 148 F.3d at 311.

Two distinct inquiries comprise the adequacy requirement. *See id.* at 312. The first inquiry determines whether any significant antagonistic interests or conflicts exist between the class representatives and absent class members. The second inquiry looks to the experience and expertise of class counsel in representing the class. *Id.* If a court finds that a single class

14

representative cannot represent the entire class, it may under Rule 23(c)(5) divide a class into subclasses where appropriate. When class members have different claims or defenses or have conflicting or antagonistic interests, subclasses are appropriate. Each subclass is then to be treated as a class within the rule, and each must have its own representative. *See id.* at 312; *Amchem*, 521 U.S. at 627, 117 S.Ct. 2231.

In this case, the typicality requirement and the first inquiry regarding the adequacy requirement are easily satisfied, as all claims within the class are based upon the same blanket strip-search policy and practice. Similarly, the second inquiry regarding adequacy, that of the adequacy of representation, is also satisfied, as the class is represented by counsel who not only have experience in complex civil rights litigation, but also a successful history with class action litigation involving this very issue.

For these reasons, the Court finds that the four requirements of Rule 23(a), numerosity, commonality, typicality, and adequacy are met in this case.

2.      Analysis under Rule 23(b)

Once a court determines that the requirements of Rule 23(a) are met, it must consider whether the action is maintainable under one of the three parts of Rule 23(b). Plaintiffs continue to maintain that the class be certified under Rule 23(b)(3).

Rule 23(b)(3) allows certification only if the questions of law or fact common to class members predominate over any questions affecting only individual members and if a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. This is commonly broken out into the so-called "predominance" and "superiority" requirements. *See In re: Ins. Brokerage Antitrust Litigation*, 579 F.3d at 258-59.

Rule 23(b)(3) also provides a non-exhaustive list of factors to aid the court in determining whether a class action is the best method of adjudication: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Although the fourth factor has been held to be not relevant in a settlement-only class certification, the other requirements of the rule "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231.

 a. Predominance

Under Rule 23(b)(3), a court must determine that common questions of law or fact predominate over any questions affecting only individual members. Predominance is found when common questions represent a significant part of the case and can be resolved for all members of the class in a single adjudication. *See* 7AA Charles A. Wright, et al., Federal Practice and Procedure § 1778 (3d ed.2005). It "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Products*, 521 U.S. at 623. To establish predominance, Plaintiffs must show by a preponderance of the evidence that the elements of their claim can be proven by evidence common to all in their class. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311-12 (3d Cir.2008).

The common factual and legal issues applicable to each class member recited above predominate over individual claims. Evidence of the circumstances of each individual search would not be necessary to prove this claim. The Court finds that the common questions of the

16

constitutionality of the County's blanket strip-search policy as applied to members of the settlement class meets the predominance requirement. *Cf. Boone v. City of Philadelphia*, 668 F.Supp.2d 693 (ED Pa. 2009); *Sutton v. Hopkins County, Ky.*, 2007 WL 119892, *6-*9 (WD Ky. 2007); *Tardiff v. Knox County*, 365 F.3d 1, 5-7 (1st Cir.2004); Blihovde v. St. Croix County, Wis, 219 F.R.D. 607, 620-22 (WD Wis. 2003); *Maneely v. City of Newburgh*, 208 F.R.D. 69, 76-77 (S.D.N.Y.2002). The predominance requirement under Rule 23(b)(3) is therefore satisfied.

      b.     Superiority

  Under the superiority requirement, a court asks whether a class action, rather than individual litigation, is the best method for achieving a fair and efficient adjudication. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154 (3d Cir.2001). A class action in this case saves the time, effort and expense of litigating the claims of as many as 12,000 class members individually and guarantees uniform treatment of individual class members. Just as this Court previously found that a class action is the superior method of adjudicating this case given the nature of the suit, the approval of the settlement is superior to the individual adjudication of claims for compensatory relief. To that end, the Court notes that settlement will afford class members with the ability to obtain prompt, predictable and certain compensatory relief.

     In sum, finding that the requirements of Rule 23(a) and Rule 23(b)(3) are met, the Court hereby certifies the class for settlement purposes.

**B.**     **Notice regarding the settlement and attorneys' fees petition**

Under Rule 23(c)(2)(B), notice must be given to potential class members by the best notice practicable under the circumstances for all classes certified under Rule 23(b)(3). This includes individual notice to all potential class members that can be identified through reasonable effort. Notice must utilize clear, concise and plain language, and further state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members. *See* Rule 23(c)(2)(B). A court must determine that notice was appropriate before evaluating the merits of the settlement itself. *See, e.g., In re Prudential*, 148 F.3d at 326-27. In this case, the notice given met the requirements of Rule 25(c)(2)(B). The notice, in all of the forms in which it was disseminated, described the proposed settlement, its terms, and the nature of the claim filed on behalf of the class. It also described the class members' right to object or to be excluded from the settlement, including their opportunity to be heard at the fairness hearing, and the binding effect of the settlement on those who choose not to opt out. Individual notice forms were mailed to 12,398 identified class members. Those notifications that were returned as undeliverable were re-sent if another address could be found using the locator database. Notice was also provided by way of a wesite and limited televison advertisements. Because individual notices were sent to all identified class members and because the notice was widely disseminated over the internet and through televison broadcasts, the Court finds that the efforts to provide notice under the requirements of Rule 23(c)(2)(B) have been met.

**C.      Approval of the Settlement as Fair, Reasonable, and Adequate**

In order to approve a class settlement, a court must find that the settlement is fair, reasonable and adequate and in the best interests of the class under Rule 23(e).  *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785 (3d Cir.1995).  When considering a class settlement, the "court plays the important role of protector of the [absent class members'] interests, in a sort of fiduciary capacity."  *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975), the Court of Appeals for the Third Circuit set forth the following nine specific factors that a district court should consider in determining whether a settlement is fair, reasonable and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Id.* at 157.

Applying these factors, the Court is satisfied that the settlement is fair, reasonable, and adequate to the class members.

1.      Risks of Establishing Liability and Damages

The risks of establishing liability and the risk of establishing damages (the fourth and fifth factors) will be addressed first because these two factors require close attention in view of the *Florence* decision.  Given that decision, the Court agrees with Plaintiffs that they face risks in

establishing liability. Such risks support approval of the settlement. *See Prudential II*, 148 F.3d at 321.

Even if Plaintiffs were able to establish liability, the amount of damages owed would present a challenge to Plaintiffs. Calculating the value of the plaintiffs' claims will depend upon a number of variables, including the circumstances and severity of the search and the effect of the search on the class members. As such, the consideration of damages also weighs towards settlement.

2.      Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor, the complexity, expense, and duration of the litigation, weighs towards settlement in this case. At trial, Plaintiffs would face the task of proving the unconstitutionality of the Defendant's policy, which would be complex, expensive and in light of *Florence*, risky. These facts make settlement the best option under the first *Girsh* factor.

3.      Reaction of the Class to the Settlement

The second factor, reaction of the class, also favors approval of the settlement. Out of over 12,000 potential class members, only one has formally objected. A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement. *See In re Cendant Corp. Litigation*, 264 F.3d 201, 234-35 (3d Cir.2001). Moreover, only five class members chose to opt out of the class. The fact that so few potential class members objected to or opted out of the settlement supports a finding of general acceptance of the settlement in the class.

4.    Stage of the Proceedings and the Amount of Discovery Completed

The third factor, the stage of the proceeding and the amount of discovery, similarly

weighs towards acceptance of the settlement.  Post-discovery settlements such as this are more

likely to reflect the true value of the claim.  *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d

Cir.1993).  Discovery has been extensive here, with numerous depositions taken and hundreds of

documents reviewed by the parties.  The discovery and other investigations that the parties have

undertaken render them sufficiently informed to make a determination about the fairness of a

settlement.

5.    Risks of Maintaining the Class Action through Trial and the Ability of the Defendants to
      withstand greater judgment

The Court agrees with Plaintiffs that given the *Florence* decision, the risks of maintaining

a class through trial support approval of the settlement.  *See Prudential II*, 148 F.3d at 321.

There is always a risk of decertification in any class action.  "Consistent with this reality, we are

satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of

approving the settlements."  *In re Automotive Refining Paint Antitrust Litigation*, 617 F.Supp. 2d

at 344.

In terms of the County's ability to withstand a greater judgment, the Court notes that

while it did not take any part in the negotiations for settlement, it was apprised that one of the

significant factors was the County's current financial situation.  *See* Doc. No. 160 (describing the

negotiations between the parties taking into account the financial condition of the County); *see

also*, settlement agreement at § III.B.3. detailing the installment arrangement for the County's

funding of the settlement fund).  Taking these representations into account as representative of

the County's current financial situation, the Court finds that Plaintiffs do have a degree of cause for concern about the ability of Defendant to allocate its resources to a greater judgment, which weighs in favor of settlement.

6.      Reasonableness of the Settlement in light of the best possible recovery and the attendant risks of litigation

Finally, the eighth and ninth factors, the reasonableness of the settlement in light of the best possible recovery and the attendant risks of litigation, support approval of the settlement. The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing. *In re General Motors*, 55 F.3d at 806. Counsel for Plaintiffs project that each class member will receive approximately $662.77. Should the class proceed through litigation on the heels of the *Florence* decision, there is a relatively obvious risk of recovery at trial. Taken together, these factors weigh in favor of settlement.

After applying the *Girsh* factors, the Court concludes that the settlement is fair, reasonable and adequate under Rule 23(e) as al factors weigh in favor of settlement. For the hereinabove stated reasons, the Court approves the settlement under Rule 23(e).

**D.      Attorneys' Fees Petition**

Class counsel in a class action who recovers a common fund for the benefit of persons other than himself or his client is entitled to a fair and reasonable award of attorneys' fees from the fund as a whole. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). Class counsel calculate their fee award using the percentage-of-recovery method, which is the favored method in common fund cases. *See In re Prudential*, 148 F.3d at 333. They

also use the alternative method of fee calculation, the lodestar method, as a cross-check in order to ensure that the fee amount is reasonable. *See, e.g., In re Insurance Brokerage Antitrust Litigation*, 579 F.3d at 280-81.

As a result of these calculations, class counsel seek an award of attorneys' fees of thirty three and one third percent (33 1/3%) of the gross settlement fund, which would amount to an award of $1,000,000 in attorneys' fees. Doc. No. 159. Class Counsel also seek reimbursement of out-of-pocket costs and expenses in an amount of $155,030.91, and an incentive award to each of the class representatives of $18,000 apiece.

The Court finds that all of these requests are reasonable with one caveat. For the reasons that follow, the Court will grant Class Counsels' motion for attorneys' fees based upon a percentage of the total amount of the settlement fund, and will award fees in an amount of thirty percent (30%) of the fund.

1.    Reasonableness of the fees

When the percentage-of-recovery method is utilized to determine attorneys' fees in a common fund case, the U.S. Court of Appeals for the Third Circuit requires a district court to consider seven factors in determining the reasonableness of the fee. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir.2000). These factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter*, 223 F.3d at 195 n. 1.

23

The first *Gunter* factor, the size of the fund created and number of persons benefitted, favors the fee requested, as class counsel were able to obtain a reasonably sizable result, $3,000,000.00, for a potential class of 12,600 individuals. The second factor, the number of substantial objections, also weighs in favor of class counsel. Only one objection has been formally filed to the settlement generally and only five potential class members have opted out. The skill and efficiency of the attorneys involved also supports approval of the attorneys' fee request. Class counsel are highly skilled in this area of the law and have conducted numerous other strip-search class actions. The submissions of record and presentations in this case were thorough and well-prepared. As such, the skill and efficiency of the legal representation in this action by class counsel support the reasonableness of a fee request.

The fourth and fifth factors, the complexity and duration of the litigation and the risk of nonpayment, also support approval of class counsels' fee request. As discussed above, this case involved a complicated issue of constitutional law that was litigated during a time of increasing uncertainty on the issue at hand. The professional services of class counsel were performed on a contingent basis, and the costs and expenses advanced by counsel have not yet been reimbursed. Further, there was a clear risk of nonpayment with this litigation given the precedent of the *Florence* decision. Accordingly, a fee award is reasonable for the time, effort and risk involved.

While the sixth factor, the amount of time devoted by counsel, supports the fee amount, it does so to a slightly lesser extent. Class counsel documents 2,744.75 hours of contingent attorney services on this litigation to justify the amount requested in their petition. While this process has required more than four years of chronological time, the Court notes that a review of the procedural history within this span of time includes time dedicated by Plaintiffs to amend

their complaint on two occasions, as well as numerous requests for extensions of time for various filing due dates. The Court is also mindful of the fact that while Plaintiffs' motion for partial summary judgment (Doc. No. 107) was granted in part and denied in part, Defendants' motion for summary judgment (Doc. No. 111) was also granted in part and denied in part. *See* Doc. No. 125.

Further, the Court cannot consider each factor in a vacuum. Just as the skill and efficiency of the attorneys involved (the third *Gunter* factor) may lend support to a request for fees, in this case, that skill has a slight dampening effect on the amount of time devoted by counsel to pursue the cause of action (the sixth factor). While being thorough may be a hallmark of professionalism, the line between thoroughness and being too thorough for the purpose of a fee award is difficult to delineate. In such cases, the greater the skill brought to the civil action by counsel, when coupled with the remarkably similar issues involved and positions advanced in many other class actions by the same counsel, somewhat qualifies the amount of time devoted by counsel to each individual action.

In considering the seventh *Gunter* factor, the awards in similar cases, the Court finds that a percentage of thirty percent (30 %), as opposed to the requested thirty three and one third percent (33 1/3%) is more consistent with, and is in fact identical to, the percentage awarded in a number of other strip-search class action settlements in this Circuit. *See*, *Boone v. City of Philadelphia*, 668 F.Supp.2d 693, 714-15 (E.D. Pa. 2009); *Suggs v. Cumberland County*, 1:06-cv-87 (D. N.J.); *Boiselle v. Mercer County*, 3:06-cv-2065 (D. N.J.); *Clark v. County of Salem*, 07-cv-2259 (D. N.J.); *see also*, *Hicks v. County of Camden*, 1:05-cv-1854 (D. N.J.)(approving a 27.5% fee percentage). The Court sees nothing in this case that is fundamentally different from

these referenced cases which would warrant a higher percentage fee than that previously awarded. In support of their request for a higher percentage, counsel argues that "Unlike here, these cases settled well prior to *Florence*." Doc. No. 159 at 11. While that may be the case, nevertheless, the parties presented the essential elements of the settlement agreement to the Court prior to the decision in *Florence*. That decision does weigh in favor of approval of the settlement under Rule 23(e), but the fact that the decision was rendered shortly after the parties agreed upon a settlement does not justify a higher percentage fee than the other strip search cases referenced.

Here, the lodestar cross-check is neutral in terms of support for a percentage higher than thirty percent in the determination of reasonable attorneys' fees. In a lodestar application, fee calculation is a function of multiplying the number of hours spent on the litigation by an appropriate hourly rate. *See In re General Motors*, 55 F.3d at 819 n. 37. The Supreme Court has held that the "market rate in the relevant community" is the reasonable rate to use. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The United States Court of Appeals for the Third Circuit has adopted the community market rate rule in determining the lodestar. *Student Pub. Interest Research Group v. AT & T Bell Lab. ( "SPIRG" )*, 842 F.2d 1436, 1448 (3d Cir.1988). This rule requires courts to "assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the private business sphere." *Id.* at 1447.

Class Counsel originally presented a lodestar calculation of fees based on hourly rates ranging from $430.00 to $550.00 per hour. *See* Doc. No. 158. These rates appeared to be normal billing rates for the regions of three of the instant law firms, namely Philadelphia and Washington D.C. However, in counsels' initial petition for fees, there was no evidence of the

market rate for this community, namely Allegheny County, Pennsylvania. Following the fairness hearing, class counsel filed a supplemental affirmation in support of the fee petition. To their credit, class counsel acknowledge the following:

> Recent case authority from this Judicial District reflects that hourly rates for civil rights attorneys range from $130 to $385 per hour, depending upon the stature of the attorney. ... Much of the work performed in this action was undertaken by senior attorneys with many years of class action experience. Without resubmitting recalculated records for all counsel, Class Counsel, for purposes of this submission, propose using a blended hourly rate of $280.00 per hour. At this hourly rate, Class Counsel's lodestar would be $768,530.00.

Doc. No. 164. The Court agrees with class counsel regarding the market rates for this region, and further accepts the proposed lodestar calculation with the blended hourly rate. A lodestar of $768,530.00 would result in the application of a multiplier of 1.3 if the Court were to award the thirty three and one third percent (33 1/3%) requested by class counsel. Whereas the multiplier will be 1.17 in an award of thirty percent (30%). Although an applied multiplier need not fall within any pre-defined range, the Court of Appeals for the Third Circuit has noted that multipliers ranging from one to four are reasonable and frequently awarded in common fund cases when the lodestar method is applied. *See In re Prudential*, 148 F.3d at 341. Because either of the referenced multipliers are within the reasonably accepted range, the lodestar cross-check is neutral in terms of the reasonableness of a thirty percent (30%) award of counsel fees, as opposed to a thirty three and one third percent (33 1/3%) award.

2.      Reimbursement of Out-of-Pocket Expenses

Additionally, class counsel seek reimbursement of out-of-pocket costs and expenses advanced in this litigation in the amount of $155,030.91. *See* Doc. No. 164. Class counsel has provided a breakdown for each firm or lawyer of said costs and expenses by category, i.e,

postage, mail and courier services; photocopying; telephone and facsimile; filing and litigation fees; transportation, hotels, and meals; publications; research; and assessments for class fund administration. The expense totals for each category appear to be reasonable for a large, complex, multi-year litigation such as this case.

Finally, class counsel has requested that the Court grant $265,000.00 to the administrator for class administration costs. This request is not unreasonable under the circumstances of this matter and will be granted subject to adjustment for the $93,395.22 heretofore billed and received by the administrator.

The Court therefore approves class counsels' request for reimbursement of costs and expenses in the amount of $155,030.91 and an award of $265.000.00 to the claims administrator minus the amount above referenced as advanced to the administrator by Class Counsel.

3.    Award to the Class Representatives

Class counsel also requests a special incentive award of $18,000 for each named class representative. These awards, although high, are justified in view of the benefit to be realized by class members. The class representatives have accepted the public exposure of the fact that they have been placed into custody, charged with a crime, and strip searched. They do so for the benefit of the class, and the Court finds that these awards are reasonable compensation for the sacrifice of their anonymity.

Conclusion

For the reasons hereinabove set forth, the Court will grant Plaintiffs' Motion for Final Approval of Settlement and for an Award of Attorneys' Fees and Expenses to Class Counsel. Payments of class administration costs and incentive awards to each class representative are also

approved.  The Court hereby certifies the class for settlement purposes and approves the settlement in this class action as described in that motion.

Lastly, the Court acknowledges the STIPULATION AND ORDER REGARDING CHILD SUPPORT OBLIGATIONS OF VERIFIED CLASS MEMBERS filed of record in this action on May 23, 2011, Doc. No. 168, which will be incorporated into this Court's final order.

An appropriate order granting final approval of class action settlement and judgment follows.


May 24, 2011                                    McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HARRY DELANDRO and KAREN MURPHY,** | ) | |
| **individually and on behalf of a class of others** | ) | |
| **similarly situated,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs** | ) | **Civil Action No. 06-927** |
| | ) | |
| **THE COUNTY OF ALLEGHENY, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND JUDGMENT**

THIS CASE coming on for hearing before the Honorable Terrence F. McVerry, U.S.D.J. on March 1, 2011, pursuant to this Court's Order of September 30, 2010, in order for this Court to conduct a Final Fairness Hearing to determine whether the proposed Settlement Agreement between the Parties is fair, reasonable and adequate, and to address Class Counsel's application for an award of attorney's fees and costs; and the Settlement Class Members being represented by Class Counsel and Defendant being represented by its attorney; AND THE COURT having read and considered the Settlement Agreement, the Notice Plan, and Memorandum of Law submitted by Class Counsel, having received evidence at the hearing, having heard arguments from Class Counsel and the Defendant, and having considered the submissions by Class Members, now makes the following:

FINDINGS OF FACT

1.    This action was commenced on July 13, 2006, as a Class Action.

2.    After several years of intensive litigation, including extensive discovery and

       motion practice, and as a result of intensive, arm's length negotiations between

30

Class Counsel and Defendant, including settlement conferences before former Magistrate Judge Kenneth J. Benson, the Parties have reached accord with respect to a Settlement that provides substantial benefits to Settlement Class Members, in return for a release and dismissal of the claims at issue in this case against the Defendant ("Settlement Agreement").  The resulting Settlement Agreement was preliminarily approved by the Court on September 30, 2010.

3.      As part of the Order Granting Preliminary Approval, this Court approved a proposed Notice Plan and Class Notice, which provided Settlement Class Members notice of the proposed Settlement.  The Notice Plan provided an opportunity for Class Members to file objections to the Settlement, and an opportunity to opt out of the Settlement.

4.      As of the deadline for the filing of objections, one objection was filed by April D. Taylor, who objected to the pro rata amount of the settlement for each claim. While this Court sympathizes with the experience of Ms. Taylor, her objection is overruled.  Without this settlement, Ms. Taylor, like all other members of the class, face a legitimate risk of recovering nothing for their experience.  Given the size of this Settlement, and the Notice Plan described above, this Court finds that the absence of any other objection is indicative of the fairness, reasonableness and adequacy of the Settlement with the Defendant.

5.      The settling Parties have filed with the Court an affidavit declaring that the mailing of the Court approved notice, consistent with the Notice Plan, has been completed.

6.     The Court finds that the published notice, mailed notice and Internet posting constitute the best practicable notice of the Fairness Hearing, proposed Settlement, Class Counsel's application for fees and expenses, and other matters set forth in the Class Notice and Short Form Notice; and that such notice constituted valid, due and sufficient notice to all members of the Settlement Class, and complied fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, the laws of Pennsylvania and any other applicable law.

7.     Any persons who wished to be excluded from this action were provided an opportunity to "opt out" pursuant to the Notice. All persons who have validly excluded themselves from the action have no rights under the Settlement Agreement and shall not be bound by the Settlement Agreement or the final judgment herein and the names of those persons are set forth in Attachment A.

8.     Settlement Class Members are bound by the: Settlement, Settlement Agreement, Release contained within the Settlement Agreement, Stipulation and Order Regarding Child Support Obligations of Verified Class Members, and the Final Order and Judgment. Settlement Class Members do not have a further opportunity to opt out of this Action.

9.     Any Class Member who did not timely file and serve an objection in writing to the Settlement Agreement, to the entry of Final Order and Judgment, or to Class Counsel's application for fees, costs, and expenses, in accordance with the procedure set forth in the Class Notice and mandated in the Order Granting

Preliminary Approval of Settlement, is deemed to have waived any such objection by appeal, collateral attack, or otherwise.

10.    On the basis of all of the issues in this litigation, and the provisions of the Settlement Agreement, the Court is of the opinion that the Settlement is a fair, reasonable and adequate compromise of the claims against the Defendant in this case, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  There are a number of factors which the Court has considered in affirming this Settlement, including:

a.    The liability issues in this case have been vigorously contested;

b.    This Settlement has the benefit of providing relief to Class Members now, without further litigation, under circumstances where the liability issues are still vigorously contested among the Parties to this litigation. This Settlement provides Class Members with a substantial monetary benefit; and,

c.    This Settlement is clearly a product of hard fought litigation between the Parties, and not a result of any collusion on the part of Class Counsel or Counsel for the Defendant.

11.    Class Counsel submitted to the Court and served on the Defendant their application for reasonable attorneys' fees, costs, and expenses consistent with the terms of the Settlement Agreement.  This Court has considered Class Counsel's request and hereby grants the request for costs and expenses, and further grants

the request for attorney's fees as modified by the Court in the amount of thirty
percent (30%) of the gross settlement fund ($900,000.00).

12.     The claims procedure established under the Settlement Agreement is fair, a
simplified process, and workable.  In any event, the Court will retain jurisdiction
to work out any unanticipated problems.

**NOW, THEREFORE, ON THE BASIS OF THE FOREGOING FINDINGS OF**

**FACT, THE COURT HEREBY MAKES THE FOLLOWING CONCLUSIONS OF LAW:**

13.     This Court has jurisdiction over the Parties and the subject matter of this
proceeding.

14.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the following
Settlement Class is certified for purposes of final settlement:

Settlement Class:

All persons who have been incarcerated at the Allegheny County
Jail commencing on July 13, 2004 and continuing to March 18,
2008 who, after being charged but not convicted of misdemeanors,
summary offenses, civil commitments and traffic infractions as
defined by the laws of the Commonwealth of Pennsylvania, as well
as parole or probation violations where the underlying offense is a
misdemeanor, summary offense or traffic infraction who, pursuant
to the policy of Allegheny County, have been strip searched upon
their entry into the Allegheny County jail without reasonable
suspicion.

15.     The Court finds that, for the purpose of this Settlement, the requirements of Rule
23 of the Federal Rules of Civil Procedure are satisfied, and that a Class Action is
an appropriate method for resolving the disputes in this litigation. All the
prerequisites for class certification under Rule 23 are present.  The Class

Members are ascertainable and too numerous to be joined. Questions of law and fact common to all Class Members predominate over individual issues and should be determined in one proceeding with respect to all Class Members. The Class Representatives' claims are typical of those of the Class. The Class Action mechanism is superior to alternative means for adjudicating and resolving this action.

16.     The class administration costs in the amount of $265,000.00, subject to adjustment for amounts heretofore paid, are approved for payment to the class administrator.

17.     The Settlement Class Representatives, Harry Delandro and Karen Murphy, are entitled to and are hereby awarded a payment of eighteen thousand dollars ($18,000.00) apiece, in recognition of the efforts they undertook in connection with this litigation.

18.     All Class Members who have made claims on the settlement are entitled to receive their *pro rata* share of the Settlement fund, however not to exceed $3,000.00 per class member, after administrative expenses, attorneys' fees, costs, and expenses, and incentive awards are deducted from the fund. Payments to class members are subject to the STIPULATION AND ORDER REGARDING CHILD SUPPORT OBLIGATIONS OF VERIFIED CLASS MEMBERS filed of record in this action on May 23, 2011, Doc. No. 168, which is hereby incorporated into this Order by reference.

19. Any unawarded monies ultimately remaining in the settlement fund will be donated to the Neighborhood Legal Services Association of Allegheny County.

20. Class Counsel are qualified, experienced, and have aggressively litigated this case, thereby demonstrating their adequacy as counsel for the Settlement Class. D. Aaron Rihn, Esquire; Robert Peirce and Associates, P.C.; Daniel C. Levin, Esquire, Levin, Fishbein, Sedran & Berman, Philadelphia, PA; Charles J. LaDuca, Esquire and Alexandra Warren, Esquire of Cuneo Gilbert & LaDuca, LLP, Washington, DC; Elmer Robert Keach, III, Esquire; Law Offices of Elmer Robert Keach, III, Amsterdam, New York; and Gary E. Mason, Esquire and Nicholas A. Migliaccio, Esquire, Mason, LLP are hereby appointed as counsel for the Settlement Class.

21. The Court grants final approval of the Settlement Agreement, as being fair, reasonable and adequate, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

22. The Court finds that an award of attorneys' fees to class counsel in an amount of thirty percent (30%) of the gross settlement fund is reasonable, and class counsel shall also be reimbursed for out-for-pocket costs and expenses as hereinabove set forth.

**NOW, THEREFORE, ON THE BASIS OF THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. The Motion for Final Approval of the Proposed Settlement is GRANTED.

2.      All Class Members who have not timely filed an opt out request are barred and

enjoined from commencing and/or prosecuting any claim or action against the

Defendant. Any Class Member who has not timely filed a request to exclude

themselves shall be enjoined from initiating and/or proceeding as a class action in

any forum.

**IT IS SO ORDERED**, this <u>24th</u> day of May, 2011.


BY THE COURT:

<u>s/ Terrence F. McVerry</u>
United States District Judge


cc:     All Counsel of Record